United States District Court
Southern District of Texas
FILED

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION

JAN 1 7 2017

David J. Bradley, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § | Criminal No. |
| | § | M-17-056 |
| ANNA RAMIREZ-AMBRIZ | § § | |

## SEALED INDICTMENT

**THE GRAND JURY CHARGES:**

At all times material to this Indictment:

### THE TEXAS MEDICAID PROGRAM

1. The Texas Medical Assistance Program also known as the Texas Medicaid program (hereinafter referred to as "Texas Medicaid"), was implemented under the provisions of Title XIX of the federal Social Security Act and Chapter 32 of the Texas Human Resources Code, for the purpose of providing joint state and federal funds to pay for medical benefits items or medical services furnished to individuals of low income who were qualified and enrolled as Texas Medicaid recipients. States desiring to participate in, and receive funding from, the federal Medicaid program were required to develop a "state plan" for medical assistance and obtain approval of the plan from the United States Department of Health and Human Services. Upon approval of its state plan, each individual state administered its own Medicaid program, subject to the requirements of the state plan, the Social Security Act, the United States Department of Health and Human Services and all other applicable state and federal laws. Texas Medicaid was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

2. Texas Medicaid assigned every person qualified and enrolled as a Texas Medicaid recipient a unique personal Texas Medicaid identification number known as a Patient Control Number ("PCN").

3. The Texas governmental agency known as the Health and Human Services Commission ("HHSC") was the single state Medicaid agency in Texas responsible, subject to oversight by the federal government, for administering the Texas Medicaid program at the state level. Federal funding was only available to the Texas Medicaid program as long as the Texas Medicaid program complied with the terms and requirements of the state plan, the Social Security Act, the United States Department of Health and Human Services, and all other applicable state and federal laws, and with the rules and regulations established by both the federal government and the State of Texas pertaining to Texas Medicaid.

4. The Texas Medicaid & Healthcare Partnership (hereinafter referred to as "TMHP") was under contract with HHSC to provide certain administrative functions such as provider enrollment, claims processing and payment, and published the Texas Medicaid Provider Procedures Manual which contained the rules and regulations of the Texas Medicaid program established by the state plan and by HHSC. The Texas Medicaid Provider Procedures Manual, bulletins, and banner messages were distributed and available to all Texas Medicaid providers and contained the rules and regulations pertaining to Medicaid-covered services, and instructions on how to appropriately bill for services provided to Medicaid recipients.

5. Managed care organizations ("MCO") were also contracted by Texas Medicaid to provide coverage for Texas Medicaid recipients. In this system, the recipient picks a health plan and gets Texas Medicaid services through that health plan's network of providers. The MCOs cover the same services that Texas Medicaid covers for the Medicaid fee-for-service recipients.

6. Texas Medicaid funds were intended to pay for covered medical services furnished to Texas Medicaid recipients, by enrolled Texas Medicaid providers, when such medical services were furnished in accordance with all of the rules, regulations, and laws which governed Texas Medicaid. Covered Texas Medicaid services included medical services and procedures furnished by physicians and other health care professionals in their offices; as well as certain products, supplies, and services used outside a physician's office such as diabetic and incontinent supplies, which were commonly known as Durable Medical Equipment ("DME").

7. A person or entity that desired to become a Texas Medicaid provider was required to submit an application and sign an agreement which included a promise to comply with all Texas Medicaid related laws and regulations. Texas Medicaid assigned a unique Texas Provider Identifier ("TPI") number to each approved Texas Medicaid provider. A person or entity with a TPI number could file claims, also known as bills, with Texas Medicaid to obtain reimbursement for covered medical services which were furnished to Texas Medicaid recipients in accordance with the rules, regulations, and laws pertaining to the Medicaid program.

8. Texas Medicaid would only pay reimbursement for medical services, including DME, which were prescribed by the recipient's physician and medically necessary to the treatment of the recipient's illness, injury, or condition. Texas Medicaid required that a completed "Home Health Services (Title XIX) Durable Medical Equipment (DME)/Medical Supplies Physician Order Form" prescribing the DME and/or supplies be signed and dated by a physician familiar with the Texas Medicaid recipient. Texas Medicaid also required that said form had to be maintained by the DME provider and the prescribing physician in the recipient's medical record. In addition, Texas Medicaid required that, before submitting a claim for payment,

the DME provider had to obtain a "DME Certification and Receipt Form" from the Texas Medicaid recipient (also known as a "delivery ticket"). The DME Certification and Receipt Form was to be signed by both the Texas Medicaid recipient and the DME provider certifying the date that the DME was received by the Texas Medicaid recipient and that the DME had been prescribed by a physician, received by the Texas Medicaid recipient, properly fitted, and met the Texas Medicaid recipient's needs. The DME provider was required to keep that form on file in the patient's medical record.

9. To receive reimbursement from TMHP or the MCO for medical services to recipients, Texas Medicaid providers submitted or caused the submission of claims to TMHP or the MCO, either directly or through a billing company. Claims could be submitted either in paper form or electronically. Texas Medicaid providers could only submit claims on or after the "date of service" to the recipient. For DME, the date of services referred to the date on which the DME was delivered to, and accepted by, the Texas Medicaid recipient.

10. Texas Medicaid DME suppliers/providers were required to submit their Texas Medicaid claims on a standardized form commonly referred to as a "Form1500", "HCF 1500", or "CMS 1500." Certain specific information was required to be on each claim form, including but not limited to the following:

    a.    the recipient's name and unique personal Texas Medicaid identification number (PCN);

    b.    the date of service;

    c.    the specific uniform national Healthcare Common Procedure Coding System (HCPCS) code established by CMS to define and describe the DME for which payment was sought; and

    d.    all applicable modifier codes.

11. DME providers in Texas were required to submit their Texas Medicaid bills or claims to TMHP or the MCO. Although providers may have sometimes submitted claims in groups for efficiency, every claim was considered individually. Claims to Texas Medicaid were paid either by paper check delivered to the United States Postal Service or by wire or radio transmissions, in transactions known as electronic funds transfers.

12. For each claim submitted, the Texas Medicaid provider certified, among other things, that: (a) the information on the claim form was true, accurate, and complete; (b) the medical services had been provided to the Texas Medicaid recipient; and (c) the medical services listed on the claim were medically indicated and necessary to the health of the Texas Medicaid recipient.

13. Texas Medicaid rules excluded some types of DME. In addition, Texas Medicaid placed monthly or yearly limits on some DME. For example, various rules limited the quantity of incontinence supplies that were allowed to any recipient each month.

## COMPASSIONATE MEDICAL SUPPLY COMPANY AND THE DEFENDANT

14. Defendant ANNA RAMIREZ-AMBRIZ was a resident of Hidalgo County, Texas and was the owner and/or operator of Compassionate Medical Supply.

15. On or about September 14, 2006, the defendant, on behalf of Compassionate Medical Supply, became enrolled as a provider in the Texas Medicaid program. Texas Provider Identifier (TPI) # 1805665 was assigned to Compassionate Medical Supply. National Provider Identifier (NPI) # 1982749487 was assigned to Compassionate Medical Supply.

16. Compassionate Medical Supply ostensibly provided durable medical equipment to Texas Medicaid recipients (hereinafter referred to as recipients) in Hidalgo County.

## TEXAS MEDICAID BILLINGS AND PAYMENTS

17. From on or about January 5, 2007 through November 19, 2013, the defendant ANNA RAMIREZ-AMBRIZ submitted or caused others to submit false or fraudulent claims in the approximate aggregate sum of $4,536,152.26 to Texas Medicaid, for durable medical equipment, which was not provided or not properly provided to Texas Medicaid recipients and/or was not authorized by a physician. As a result of said false or fraudulent claims, Texas Medicaid paid the approximate aggregate sum of $3,143,149.41.

## SCHEME TO DEFRAUD

18. In order to execute and carry out her illegal activities, the defendant ANNA RAMIREZ-AMBRIZ committed the following acts:

(a) The defendant submitted or caused others to submit false or fraudulent claims with Texas Medicaid for reimbursement of durable medical equipment that was not provided. Specifically, the defendant billed for incontinence supplies that were either not delivered or only partially delivered to the recipients. The defendant filed or caused others to file the claims with Texas Medicaid knowing that said claims were false and fraudulent since durable medical equipment for the recipients was not provided or not properly provided.

(b) The defendant submitted or caused others to submit false or fraudulent claims with Texas Medicaid for reimbursement of durable medical equipment that was not authorized by a physician.

(c) The defendant submitted or caused others to submit false or fraudulent claims to Texas Medicaid for the large sizes of pull-ons when that size was not needed by the recipients and/or was not provided by Compassionate Medical Supply because Texas Medicaid paid more for that size. Additionally, the large sizes billed for by the defendant were not authorized by a physician as required by Texas Medicaid.

(d) The defendant and Compassionate Medical Supply billed for more incontinence supplies (i.e. pull-ons, youth diapers, and disposable under pads) than that which was purchased from the distributors.

(e)     During and in relation to her fraudulent conduct and to further her scheme and artifice to defraud Texas Medicaid, the defendant knowingly transferred, possessed, or used or knowingly caused others to transfer, possess, or use, without lawful authority, one or more means of identification of Texas Medicaid beneficiaries which she used to execute her scheme and artifice to commit health care fraud.

**COUNTS ONE THROUGH SIX**
**<u>HEALTH CARE FRAUD</u>**
**(18 U.S.C. § 1347)**

19.     The Grand Jury incorporates by reference paragraphs 1 through 18 as though fully restated and re-alleged herein.

20.     Beginning on or about January 5, 2007 through November 19, 2013, the exact dates unknown to the Grand Jury, in the McAllen Division of the Southern District of Texas and elsewhere, the defendant,

**ANNA RAMIREZ-AMBRIZ**

did knowingly and willfully execute or attempt to execute a scheme or artifice to defraud the health care benefit program known as Texas Medicaid, or to obtain by false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of the health care benefit program known as Texas Medicaid, in connection with the delivery of, or payment for, health care benefits, items, or services. Defendant submitted, aided, abetted, counseled, commanded, induced, procured or otherwise facilitated or caused each other and others to submit false and fraudulent claims for medical benefits, items, and services which were not provided, including, but not limited to the following:

| Count | Patient | Date Billed (On or about) | Amount Billed | Reason Claim Submitted to Texas Medicaid Was False and Fraudulent |
|---|---|---|---|---|
| 1 | V.G. | 7/3/12 | $230.40 | Compassionate Medical Supply billed for more incontinence supplies than were actually delivered to recipient. |
| 2 | M.L. | 8/17/12 | $250.00 | Compassionate Medical Supply billed for more incontinence supplies than were actually delivered to recipient. |
| 3 | A.Z. | 9/12/12 | $240.00 | Compassionate Medical Supply billed for more incontinence supplies than were actually delivered to recipient. The company also billed for adult large size pull-ons when recipient was not authorized by physician to receive that size. |
| 4 | L.B. | 9/27/12 | $250.00 | Compassionate Medical Supply billed for more incontinence supplies than were actually delivered to recipient. |
| 5 | P.P. | 10/4/12 | $206.40 | Compassionate Medical Supply billed for more incontinence supplies than were actually delivered to recipient. |
| 6 | G.H. | 10/9/12 | $240.00 | Compassionate Medical Supply billed for more incontinence supplies than were actually delivered to recipient. |

All in violation of Title 18, United States Code, Section 1347.

### COUNTS SEVEN THROUGH NINE
### AGGRAVATED IDENTITY THEFT
### (18 U.S.C. § 1028A)

21.    The Grand Jury incorporates by reference paragraphs 1 through 18 and paragraph 20 as though fully restated and re-alleged herein.

22.    Beginning on or about January 5, 2007 through November 19, 2013, the exact dates being unknown to the Grand Jury, in the McAllen Division of the Southern District of Texas and elsewhere, the defendant,

ANNA RAMIREZ-AMBRIZ

during and in relation to a felony violation of Title 18, United States Code, Section 1347, Health Care Fraud, did knowingly transfer, possess, or use, without lawful authority, a means of identification of another person, including but not limited to the following:

| Count | Patient | Date Billed (On or About) | Amount Billed | Reason Claim Submitted to Texas Medicaid Was False and Fraudulent | Means of ID Used Without Lawful Authority on False and Fraudulent Claim |
|---|---|---|---|---|---|
| 7 | A.Z. | 9/12/12 | $240.00 | Compassionate Medical Supply billed for more incontinence supplies than actually delivered to recipient. (See Count 3.) | Patient's identifying information and/or Texas Medicaid Number |
| 8 | L.B. | 9/27/12 | $250.00 | Compassionate Medical Supply billed for more incontinence supplies than actually delivered to recipient. (See Count 4.) | Patient's identifying information and/or Texas Medicaid Number |
| 9 | G.H. | 10/9/12 | $240.00 | Compassionate Medical Supply billed for more incontinence supplies than actually delivered to recipient. (See Count 6.) | Patient's identifying information and/or Texas Medicaid Number |

All in violation of Title 18, United States Code, Section 1028A.

## NOTICE OF FORFEITURE
## (18 U.S.C. § 982(a)(7))

Pursuant to Title 18, United States Code, Section 982(a)(7), as a result of the criminal offenses charged in Counts 1 through 6 of this Indictment, the United States of America gives the defendant,

**ANNA RAMIREZ-AMBRIZ**

Notice that upon her conviction of a health care offense, all property, real or personal, which constitutes or is derived, directly or indirectly, from gross proceeds traceable to such offense, is subject to forfeiture.

### Money Judgment

The defendant is notified that upon conviction, a money judgment may be imposed equal to the total value of the property subject to forfeiture, which is in the amount of at least $3,143,149.41.

### Substitute Assets

The defendant is notified that in the event that property subject to forfeiture, as a result of any act or omission of a defendant,

(A) cannot be located upon the exercise of due diligence;

(B) has been transferred or sold to, or deposited with, a third party;

(C) has been placed beyond the jurisdiction of the court;

(D) has been substantially diminished in value; or

(E) has been commingled with other property that cannot be divided without difficulty,

the United States will seek to forfeit any other property of the defendant up to the total value of the property subject to forfeiture, pursuant to Title 21, United States Code, Section 853(p), incorporated by reference in Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

_____
FOREPERSON

KENNETH MAGIDSON
UNITED STATES ATTORNEY

_____
ANDREW R. SWARTZ
ASSISTANT UNITED STATES ATTORNEY